No. 25-3546

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### JONATHAN D. BLECHER and ALAN P. BLECHER,

*Appellants*,

v.

### PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY, and THE PROGRESSIVE CORPORATION,

*Appellees.*

---

Appeal from the December 19, 2025 Order of the Honorable Gerald J. Pappert of the U.S. District Court for the Eastern District of Pennsylvania, Granting Appellees' Motion to Dismiss for Failure to State a Claim

---

### BRIEF OF APPELLEES

### PROGRESSIVE SELECT INSURANCE COMPANY
### PROGRESSIVE CASUALTY INSURANCE COMPANY, AND
### THE PROGRESSIVE CORPORATION

---

*Filed on behalf of Appellees*:

Progressive Casualty Insurance
Company, Progressive Select
Insurance Company, and The
Progressive Corporation

*Counsel for Appellees*:

Daniel J. Twilla (PA I.D. # 93979)
Adam P. Murdock (PA I.D. # 326347)
GORDON REES SCULLY
MANSUKHANI, LLP
707 Grant Street, Suite 3800
Pittsburgh, PA 15219

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. i

COUNTER-STATEMENT OF THE ISSUES ..................................... 1

COUNTER-STATEMENT OF THE CASE ......................................... 3

I.     FACTS ........................................................................................... 3

II.    PROCEDURAL HISTORY ...................................................... 4

III.  RULINGS PRESENTED FOR REVIEW .................................. 8

SUMMARY OF THE ARGUMENT ................................................. 8

ARGUMENT FOR APPELLEE ...................................................... 9

I.    STANDARD OF REVIEW ....................................................... 9

II.   THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS AMENDED COMPLAINT WHERE THE BLECHERS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER PROGRESSIVE SELECT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA ........ 9

    A.    Specific Jurisdiction ........................ Error! Bookmark not defined.0

    B.    General Jurisdiction ........................................................ 12

    C.    The District Court Addressed All of The Blechers' Arguments and There is No Reversible Error ........................................... 14

    D.    The Actions Taken by Progressive Select in Direct Response to the Blechers' Decision to Store the Vehicle in Pennsylvania – not Florida – Do Not Constitute Deliberate Contacts or Purposeful Availment Sufficient to Establish Jurisdiction .............................. 18

    E.    A Jurisdictional Analysis Related to the Defamation Claim Was Not Required Because the District Court Dismissed the Claim for Failure to State a Claim ................................................. 21

III.  THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS' CLAIMS FOR DEFAMATION WHERE THE BLECHERS FAILED TO SET FORTH A LEGALLY COGNIZABLE CLAIM FOR DEFAMATION .................................................. 25

    **A.**      **The District Court Did Not Err in Relying Upon <u>Marino</u> and <u>Pawlowski</u> in Dismissing the Blechers Defamation Claim** ............26

    **B.**      **Application of 75 Pa.C.S. § 1795 and 40 P.S. § 474.1 Would Not Change the District Court's Determination That the Alleged Defamatory Statement Is Protected**....................................................27

    **C.**      **The District Court Did Not Err in Determining That the Blechers' "Internal Publication" Theory Was Meritless**................................28

    **D.**      **The Blechers' Reliance on <u>Ray v. Kertes</u> Is Misplaced, As the Holding Was Narrowly Applicable Only to Actions Under 42 U.S.C.A. § 1997e** ................................................................................30

**IV.**      **THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS' CLAIMS AGAINST PROGRESSIVE CASUALTY AS PROGRESSIVE CASUALTY WAS ACTING ON BEHALF OF PROGRESSIVE SPECIALTY** .....................................................................31

    **A.**      **The District Court Properly Concluded that The Progressive Corporation Has No Liability Based Upon the Principles Enumerated in <u>Brown</u>**.......................................................................31

    **B.**      **The Blechers' Reliance Upon <u>Wicks</u> is Misplaced**.........................31

    **C.**      **Establishing An Agency Relationship Would Yield the Same Result As Held By the District Court** .............................................33

**CONCLUSION**...........................................................................................34

# TABLE OF AUTHORITIES

**Cases**

Abria Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc., 2024 WL 4173781 (E.D. Pa. Sep. 12, 2024)...................................................................10

Arora Tech. Grp., LLC v. David, 2024 WL 4242812  (E.D. Pa. Sep. 19, 2024) ........................................................................................................... 11

Atlantic Marine Const.  Co., Inc. v. U.S. Dist. Court. for Western Dist. of Texas, 571 U.S. 49 (2013)........................................................................... 23

Autochoice Unlimited Inc. v. Avangard Auto. Fin., Inc., 9 A.3d 1207 (Pa. Super Ct. 2010)............................................................................................... 24

Blacklick Hotspot Corp. v. Mansfield Oil Company of Gainesville, Inc., 2021 WL 3812561 (W.D. Pa. Aug. 10, 2021)........................................................ 23

Breslin v. Dickinson Twp., 2010 WL 3293337 (M.D. Pa. Aug. 19, 2010)..... 29

Bristol-Meyers Squibb Co. v. Superior Court, 582 U.S. 255 (2017) ............... 9

Brown v. Card Service Center, 464 F.3d 450 (3d Cir. 2006)............................ 9

Brown v. End Zone, 259 A.3d 473 (Pa. Super. Ct. 2021)................................ 31

Brown v. Lockheed Martin Corp., 814 F.3d 619 (2d Cir. 2016).................... 13

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) .......... 11, 12, 18, 19, 20

Crescent Intern., Inc. v. Avatar Communities, Inc., 857 F.2d 943 (3d Cir. 1988) ........................................................................................................... 24

Daimler AG v. Bauman, 571 U.S. 117 (2014) .................................................. 13

Danzinger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124 (3d Cir. 2020) ...................................................................................................... 9, 10

Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006) ............... 9

Farmers Ins. Exch. v. Portage La Prairie Mut. Ins., 907 F.2d 911 (9th Cir. 1990) ...................................................................................................... 17, 20

Fowler v. UPMC Shadyside, 578 F.2d 203 (3d Cir. 2009) .......................... 9, 15

Gen. Elec. Co. v. Deutz AG, 270F.3d 144 (3d Cir. 2001)................................ 12

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)10, 13

Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278 (M.D. Pa. Mar. 19, 2018) ........................................................................................................... 18

Hanson v. Denckla, 357 U.S. 235 (1958) ....................................... 10, 16, 19, 20

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ........
....................................................................................................................... 11, 18

Hunt v. Erie Ins. Grp, 728 F.2d 1244 (9th Cir. 1984) ......................... 17, 19, 20

In Re: Howmedica Osteonics Corp., 867 F.3d 390 (3rd Cir. 2017).................. 23

In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30 (2d Cir. 2014)
............................................................................................................................. 13

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) ............................. 11, 12, 13

Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995)............................. 23

Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695 (7th Cir. 2015) ..................... 13

Kubik v. Letteri, 614 A.2d 1110 (Pa. 1992) ..................................................... 10

Marino v. Fava, 915 A.2d 121 (Pa. Super. Ct. 2006)..................... 21, 22, 26, 27

Martinez v. Aero Caribbean, 764 F.3d 1062 (9th Cir.2014) ........................... 13

Mathias v. Caterpillar, Inc., 203 F.Supp.3d 570 (E.D. Pa. 2016) ................... 23

Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217 (3d Cir. 1992)
............................................................................................................................. 11

Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324 (3d Cir. 2009) .............. 17

Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429 (5th Cir.2014) ................... 13

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312 (3d Cir. 2007) .............. 9, 11

Otto v. Erie Ins. Exch., 11 F.Supp.3d 482 (E.D Pa. 2014)............................... 23

Pawlowski v. Smorto, 588 A.2d 36 (Pa. Super. Ct. 1991) .................. 22, 26, 27

Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc., 2024 WL 4253347 (M.D. Pa. Sep. 20, 2024) ................................................. 10

Winner v. Progressive Advanced Insurance Company, 2025 WL 2716494 (Pa. Super. Ct. 2025) ........................................................................ 24, 25

Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434 (3d Cir. 1987) .......................................................................................... 11

Rambo v. Am. S. Ins., 839 F.2d 1415 (10th Cir. 1988)........................... 17, 20

Ray v. Kertes, 285 F.2d 287, 297 (3d Cir. 2002) ............................................ 30

Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir. 1997)....... 30

Van Divner v. Sweger, 257 A.3d 1254 (Pa. Super. Ct. 2021)........................ 25

Walden v. Fiore, 571 U.S. 277, 284 (2014)................................................ 12, 18

Walton v. Johnson, 66 A.3d 782 (Pa. Super. Ct. 2019).................................. 33

Wicks v. Milzoco Builders, Inc., 470 A.2d 86 (Pa. 1983) ......................... 31, 32

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 9, 30

40 P.S. § 474.1......................................................................................... 27, 28

42 Pa.C.S.A. § 5322(b) ................................................................................. 10

75 Pa.C.S. § 1795.......................................................................................... 27

42 U.S.C.A. § 1997e ..................................................................................... 30

# COUNTER-STATEMENT OF THE ISSUES

This appeal involves three issues:

(1)    Whether the District Court properly dismissed Jonathan D. Blecher and Alan P. Blecher's breach of contract, bad faith, and declaratory judgment claims against Progressive Select Insurance Company where the Blechers' Complaint failed to set forth sufficient factual allegations to support that the United States District Court for the Eastern District of Pennsylvania had personal jurisdiction over the Blechers' breach of contract, bad faith and declaratory judgment claims.

*Proposed Answer in the Affirmative*

(2)    Whether the District Court properly dismissed Jonathan D. Blecher and Alan P. Blecher's breach of contract, bad faith, and declaratory judgment claims against Progressive Casualty Insurance Company and The Progressive Corporation where the Blechers' Complaint failed to set forth a claim upon which relief could be granted.

*Proposed Answer in the Affirmative*

(3)    Whether the District Court properly dismissed Jonathan D. Blecher and Alan P. Blecher's defamation claim against Progressive Select Insurance Company, Progressive Casualty Insurance Company, and The Progressive Corporation where the Blechers' Complaint failed to set forth a claim upon which relief could be granted.

***Proposed Answer in the Affirmative***

## COUNTER-STATEMENT OF THE CASE

### I.  FACTS

This matter involves the interpretation of a Florida insurance policy issued by an insurer which is licensed in Florida for a vehicle which allegedly was to be garaged in Florida, related to the alleged theft of a 2022 Dodge Challenger Hellcat Superstock (the "Vehicle").  **Appx22-23 ¶** 1.  The Vehicle was allegedly stolen on April 8, 2025.  **Appx34 ¶** 21.

Progressive Select Insurance Company ("Progressive Select") is an Ohio corporation which is licensed to issue insurance policies in Florida.  **Appx57 ¶** 9. Progressive Select Insurance Company issued policy number 988620041 (the "Policy") to Alan P. Blecher at 411 Walnut Street, 19810, Green Cove Springs, Florida 32043.  **Appx60**.  The Policy provided coverage for the Vehicle, which was to be garaged in Florida, subject to all of the terms and conditions of the Policy. **Appx60-121**.  The Policy was a Florida policy.  **Appx60-121**.  Progressive Casualty Insurance Company ("Progressive Casualty") did not issue the Policy at issue and is not a party to the insurance contract.  **Appx57 ¶** 12.  The Progressive Corporation did not issue the Policy at issue and is not a party to the insurance contract.  **Appx57 ¶** 13.

The Policy was issued pursuant to an application executed by Alan Blecher in which he acknowledged and agreed that "each vehicle listed in this application is

garaged at the same location in the ZIP code provided in this application more than 50% of the time." **Appx57** ¶ 5.

The Policy contains a clear, unambiguous form selection clause which states that "[u]nless we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction for the county and state where the person seeking coverage from this policy **lived at the time of the accident**." **Appx119** ¶ 8 (emphasis added).

Around late September or early October, Alan and/or Jonathan Blecher purchased a 2022 Dodge Challenger Hellcat from a Delaware dealer and arranged for the car's delivery in Philadelphia, Pennsylvania. **Appx6**; **Appx22** ¶ 1; **Appx26** ¶ 15; **Appx32** ¶ 18. The Vehicle never left Pennsylvania from the time of purchase to the date it was allegedly stolen, and the Vehicle was never garaged in Florida. **Appx27** ¶ 16; **Appx33** ¶ 18. Thereafter, the Blechers filed a claim with Progressive Select seeking coverage for the alleged theft, and, following an investigation into the facts of the loss, Progressive Select denied coverage based upon fraud and misrepresentation at the time of the Policy's inception. **Appx7**; **Appx35** ¶ 23.

## II. PROCEDURAL HISTORY

The Blechers filed a Complaint against Progressive Select Insurance Company, Progressive Casualty Insurance Company, and The Progressive Corporation (collectively "Progressive Defendants") on July 31, 2025 in the United

States District Court for the Eastern District of Pennsylvania. **Appx20**.

The Blechers filed an Amended Complaint against Progressive Select Insurance Company, Progressive Casualty Insurance Company, and The Progressive Corporation on August 19, 2025. **Appx20**; **Appx22-48**.

In response, on October 15, 2025, the Progressive Defendants filed a Motion to Dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim. **Appx20**; **Appx49-146**. On October 27, 2025, the Blechers opposed the Motion. **Appx21**; **Appx147-250**. The Progressive Defendants filed a Reply Brief in Support of Motion to Dismiss November 3, 2025. **Appx21**; **Appx251-258**. Thereafter, the Blechers filed a Sur-Reply in Opposition to Motion to Dismiss on **Appx21**; **Appx259-266**. On December 19, 2025, the District Court entered an Order and Memorandum granting the Progressive Defendants' Motion to Dismiss. **Appx21**; **Appx5-18**.

As to the issue of general jurisdiction, the District Court concluded that the United States District Court for the Eastern District of Pennsylvania did not have general jurisdiction over the Blechers' claims, as "Progressive Select is incorporated in Ohio and maintains its principal place of business in Ohio", and there was not a "sufficient relationship with Pennsylvania to render it 'essentially at home' in the Commonwealth." **Appx10**.

As to the issue of specific jurisdiction, the District Court held that specific

jurisdiction also did not apply, as "The Blechers fail[ed] to satisfy the first requirement – that Progressive Select purposefully availed itself of the privilege of conducting business in Pennsylvania." **Appx10**. The District Court elaborated that Progressive Select did not deliberately target Pennsylvania and did not solicit Alan Blecher's business in Pennsylvania. **Appx11**. The District Court noted that Progressive Select should "be haled into court in a forum State based on his *own* affiliation with the state." **Appx12** (emphasis in original). Deliberate contact with a third-party in the forum state is not the same as deliberate contact with the State itself. **Appx12**.

Additionally, the District Court made clear that the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of deliberate contact with the forum State." **Appx12**. The Blechers' decision to keep the Vehicle in Philadelphia is the reason Progressive Select was forced to investigate the claim in Pennsylvania. **Appx12**. Progressive Select's actions, such as the investigation and communication of Plaintiff in Pennsylvania, is not enough to satisfy the required elements. **Appx12-13**.

As for the Blechers' claims against Progressive Casualty and the Progressive Corporation, the District Court found that the Blechers failed to allege sufficient facts to prove a contract existed between the Blechers and Progressive Casualty or between the Blechers and the Progressive Corporation. **Appx14**. While it is true

that Alan Blecher entered into a contract with Progressive Select, he did not enter into a contract with Progressive Casualty or the Progressive Corporation. **Appx14-15**. General contract law principles govern, and a non-party to a contract cannot breach that contract. **Appx15**. Additionally, a parent corporation, like the Progressive Company, is not liable for acts of its subsidiaries. **Appx15**.

The Blechers further failed to allege sufficient facts to show that Progressive Casualty and the Progressive Corporation are the insurers, and because they are not the insurers, there can be no claim for insurance bad faith. **Appx15-16**.

As to the Blechers' claim for defamation against all Appellees, the District Court held that the statement made was subject to the law-enforcement privilege, which shields Appellees from liability because the statement as made solely to law enforcement officials, the statement was limited to an accusation of fraud, and the statement was made for the purpose of convincing the proper authorities to institute criminal proceedings – and the referral fit squarely within the privilege. **Appx16**.

Accordingly, the District Court dismissed the Blechers' Amended Complaint in its entirety without leave to amend, as amendment would have been futile; though the District Court noted that the The Blechers still had the option to file the suit in Florida. **Appx17-18**.

Following the District Court's grant of summary judgment, The Blechers filed the within appeal. **Appx1-4**.

## III.    RULINGS PRESENTED FOR REVIEW

The Blechers now appeal from the December 19, 2025 Memorandum and Order granting the Progressive Defendants' Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

The District Court's December 19, 2025 Order should be affirmed because it properly concluded that the Blechers' Amended Complaint: (1) failed to set forth sufficient facts to establish that the Eastern District had personal jurisdiction over the Blechers' breach of contract and bad faith claims against Progressive Select, (2) failed to state a claim for breach of contract or bad faith against Progressive Casualty and the Progressive Corporation, and (3) failed to state a claim for defamation against the Progressive Defendants.

While the Blechers appear to raise issues regarding reversible error on the part of the District Court, a proper reading of their Brief shows that it is overwhelmingly a thinly veiled attempt to rehash the arguments made at the District Court level, which were properly and effectively disposed of upon the filing of the Motion to Dismiss.  The District Court did not err in determining that the Blechers' claims in Pennsylvania should be dismissed and re-filed in Florida.

Accordingly, for the reasons discussed herein, the District Court's December 19, 2025 Memorandum and Order dismissing The Blechers' Amended Complaint in its entirety should be affirmed.

## ARGUMENT FOR APPELLEE

### I.     STANDARD OF REVIEW

This Court reviews the District Court's grant a Motion to Dismiss based upon lack of personal jurisdiction *de novo*.  Danzinger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 129 (3d Cir. 2020) (citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).  The Third Circuit exercises plenary review.  Brown v. Card Service Center, 464 F.3d 450, 452 (3d Cir. 2006) (citing Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006)).  When considering an appeal from a Rule 12(b)(6) dismissal, the court must accept well-pled allegations in the Complaint as true.  Id. at 452.  However, the Court should "disregard any legal conclusions," even if phrased as factual allegations.  Fowler v. UPMC Shadyside, 578 F.2d 203, 210 (3d Cir. 2009)

### II.     THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS AMENDED COMPLAINT WHERE THE BLECHERS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER PROGRESSIVE SELECT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

The United States Supreme Court's jurisprudence regarding personal jurisdiction over a non-resident defendant involves the nature and extent of the defendant's relationship to the forum state.  See Bristol-Meyers Squibb Co. v. Superior Court, 582 U.S. 255 (2017).  There are two ways in which a federal district court may obtain personal jurisdiction over a defendant: general jurisdiction and

specific jurisdiction.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).

Specific jurisdiction is more limited and deals with a party who has taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235 (1958). Specifically, the contacts must show that the defendant deliberately directed their activities at the forum and the claims must arise out of or relate to the defendant's activities in the forum. Abria Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc., 2024 WL 4173781, at *4 (E.D. Pa. Sep. 12, 2024).

In contrast, general personal jurisdiction may be exercised over defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc., 2024 WL 4253347, at *4 (M.D. Pa. Sep. 20, 2024) (quoting Goodyear, 564 U.S. at 919).  For an individual, general jurisdiction exists in the forum of the individual's domicile.  Powerhouse Commc'ns, LLC, at *4.

## A.    Specific Jurisdiction

Pennsylvania's long-arm statute gives its courts jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution.  Danzinger, 948 F.3d at 129 (citing 42 Pa.C.S.A. § 5322(b); Kubik v. Letteri, 614 A.2d 1110,

1113–14 (Pa. 1992)). When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." <u>Mellon Bank (East) PSFS, Nat. Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992). "The plaintiff bears the burden of establishing that personal jurisdiction exists and must make a 'threshold showing in support of jurisdiction.'" <u>Arora Tech. Grp., LLC v. David</u>, 2024 WL 4242812, at *1 (E.D. Pa. Sep. 19, 2024) (internal citation omitted). Said differently, the plaintiff must establish the non-resident defendants have sufficient minimum contacts with the Commonwealth of Pennsylvania to satisfy due process of law. <u>Id.</u>

To meet this burden, the plaintiff must establish "with reasonable particularity" three elements. <u>Mellon Bank</u>, 960 F.2d at 1223 (<u>quoting</u> <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987)). "First, the defendant must have 'purposefully directed [its] activities' at the forum." <u>O'Connor</u>, 496 F.3d at 317 (alteration in original) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claims "must 'arise out of or relate to'" the defendant's activities. <u>Id.</u> (<u>quoting</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984). And third, exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." <u>Id.</u> at 316 (<u>quoting</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).

For contract claims, "but-for" causation is insufficient, and "the defendant's contacts with the forum [must have been] instrumental in either the formation of the contract or its breach." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). Notably, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014) (emphasis in original) (*quoting* Burger King Corp., 471 U.S. at 475). In addition, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 571 U.S. at 285.

Here, the District Court held that the Blechers failed to satisfy even the first requirement of a three prong test, as Progressive Select did not purposefully avail itself to the privilege of conducting business in Pennsylvania. **Appx10**. Nothing showed that Progressive Select deliberately targeted Pennsylvania. **Appx11**. Progressive Select did not have deliberate contact with Pennsylvania and the Blechers' own unilateral contacts do not satisfy the requirements under Pennsylvania law. **Appx.11-13**

## B. General Jurisdiction

Due to the all-encompassing nature of general jurisdiction, the U.S. Supreme Court has recognized strict limits on when such jurisdiction may be exercised consistent with constitutional requirements. A corporation's mere "casual presence" in a state is insufficient to render the entity "essentially at home" there. Int'l Shoe Co.

v. Washington, 326 U.S. 310, 317 (1945); Goodyear, 564 U.S. at 919.  Nor is a defendant's engagement in "a substantial, continuous, and systematic course of business" enough.  Goodyear, 564 U.S. at 919, quoting Int'l Shoe Co., 326 U.S. at 317); Daimler AG v. Bauman, 571 U.S. 117, 138 (2014).

U.S. Supreme Court precedent makes clear that general jurisdiction exists only when a corporation's affiliations with a forum state are so continuous and systematic as to render the corporation essentially at home in the forum state, which is almost always limited to a company's principal place of business or place of incorporation.  This view is consistent with the view of Federal Courts of Appeals which have considered the issue post-Daimler.  See Brown v. Lockheed Martin Corp., 814 F.3d 619 (2d Cir. 2016) ("in our view Daimler established that, except in a truly "exceptional" case, a corporate defendant may be treated as "essentially at home" only where it is incorporated or maintains its principal place of business – the "paradigm" cases); In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 39–41 (2d Cir. 2014) (recognizing restrictions voiced by Supreme Court in Daimler); Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695, 698 (7th Cir. 2015) (noting Goodyear and Daimler's "stringent criteria"); Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir.2014) ("Daimler makes clear the demanding nature of the standard for general personal jurisdiction over a corporation."); Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir.2014) (noting, in light of Daimler,

that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

Here, the District Court made it unequivocally clear that general jurisdiction does not apply to the facts of this case. **Appx10**. Progressive Select is incorporated in Ohio, maintains its principal place of business there, and does not have sufficient contacts with Pennsylvania to render it at home in the Commonwealth. **Appx10**.

## C.   The District Court Addressed All of The Blechers' Arguments and There is No Reversible Error

The Blechers' first point of contention is that the District Court committed reversible error by dismissing the claims against Progressive Select for lack of jurisdiction where The Blechers raised only one counterargument, alleging that the District Court effective erased the other arguments set forth in the Response in Opposition to the Motion to Dismiss. What The Blechers fail to consider is that the District Court did in fact address these arguments and clearly found them unavailing, as too should this Court.

The Blechers allege that the District Court failed to consider several specific arguments raised within their Brief in Opposition to the Motion to Dismiss:

(1) "The 'Unilateral Choice' Argument (Agency)";

(2) "The 'Hostile Act' Argument (Purposeful Availment)";

(3) "Potential In-Person interview Conducted by PA Personnel";

(4) "The 'Effects Test' Argument (Intentional Torts)";

(5) "The '*Walden* Rebuttal' Argument (Supreme Court Precedent)"; and

(6) "the '*General Electric* Misapplication' Argument".

<u>See</u> Appellants' Br. at 18-21. While the Blechers argue that the District Court ignored or refused to consider these arguments, the Memorandum and Opinion refutes these allegations, and the District Court properly addressed the arguments and correctly disposed of the claims.

While The Blechers creatively title their respective arguments, each turns on the same jurisdictional question: whether Progressive Select had sufficient minimum contacts, which Progressive Select itself created, to satisfy the jurisdictional requirements as set forth above. The clear, simple answer is that Progressive Select did not, and The Blechers' Amended Complaint fell woefully short of establishing any facts to support their claims. The District Court was required to take all *well-pleaded facts*, scarce as they may be, as true, but not The Blechers' legal conclusions and unfounded fabrications. <u>See</u> <u>Fowler</u>, 578 F.3d at 310.

A plain reading of the December 19, 2025 Memorandum makes it clear that the District Court understood and considered the Blechers' arguments, but ultimately rejected them when making its well-reasoned decision. The District Court noted that it was not Progressive Select's choice that was at issue; rather, the only "unilateral choice" at issue was The Blechers' unilateral choice to store their car in Pennsylvania, in direct contradiction to the submitted application, which

necessitated a Progressive representative in Pennsylvania to handle the claim. **Appx12**. Indeed, this very argument – that an insurance company's investigation of a claim in a forum showed the company purposefully availed itself of the privilege of conducting business in the forum – has been rejected. **Appx13**.

The Blechers' contentions again fail to take into consideration which party's actions ultimately caused the downstream ripple effects. The Blechers aver, for instance, with no factual predicate, that Appellees "voluntarily and maliciously" referred Alan Blecher to the Pennsylvania Attorney General, but The Blechers fail to understand that it was the action of The Blechers in Pennsylvania, and the statutes and regulations that applied to those actions, that required that referral in Pennsylvania. Again, the unilateral activity of The Blechers cannot satisfy the requirements of deliberate contact with Pennsylvania by Appellees. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). The District Court clearly addressed this issue. **Appx10-13**.

The District Court did not ignore The Blechers' arguments at all. Indeed, the District Court provided a well-reasoned opinion that took into consideration all of the facts and relevant legal authorities and effectively disposed of the Blechers' arguments regarding jurisdiction. **Appx8-13**. Just because the District Court was able to efficiently dispose of the Blechers' protracted arguments does not mean that they were not considered.

The Blechers rely on <u>Metcalfe</u> in an effort to support their argument, but the Blechers misinterpret and misapply it to the instant case. The facts in <u>Metcalfe</u> are easily distinguishable from the facts of the instant matter. <u>See Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324 (3d Cir. 2009). Specifically, the holding in Metcalfe was such that the district court failed to construe disputed facts in favor of the plaintiffs, which warranted a reversal of the dismissal; however, it is clear that the District Court here did not construe any facts against The Blechers. <u>See id.</u> There is no factual dispute here, as The Blechers' Amended Complaint fails to allege that Progressive Select's conduct was directed at Pennsylvania, even when viewed most favorably to The Blechers. The Blechers allege that the insured vehicle was stolen in Philadelphia, Pennsylvania, which is not a contact between Progressive Select and Pennsylvania; rather, this is a contact between The Blechers and Pennsylvania. Plaintiff does not cite a single instance of activity that connects Progressive Select Insurance Company to Pennsylvania, as the law is clear that the mere presence of a representative in the forum state or an investigation in the forum state is insufficient to create the meaningful contacts required under the law. <u>See Hunt v. Erie Ins. Grp</u>, 728 F.2d 1244 (9th Cir. 1984); <u>Rambo v. Am. S. Ins.</u>, 839 F.2d 1415, 1420 (10th Cir. 1988); <u>Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.</u>, 907 F.2d 911, 913 (9th Cir. 1990).

Further, the underlying controversy between the parties stems from the Policy

that was contracted for in Florida by an Ohio corporation licensed to issue insurance policies in Florida and an individual residing in Florida with a vehicle which allegedly was to be garaged in Florida. **Appx60-121**. Because the contract dispute is the activity to be considered by the court, not the alleged theft of the vehicle, Plaintiff fails to satisfy the first prong of a specific jurisdiction analysis. See Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278, 292 (M.D. Pa. Mar. 19, 2018); Helicopteros, 466 U.S. at 417 ("[The] unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); Walden, 571 U.S. at 285 ("But the plaintiff cannot be the only link between the defendant and the forum."); Burger King Corp., 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

> ### D. The Actions Taken by Progressive Select in Direct Response to the Blechers' Decision to Store the Vehicle in Pennsylvania – not Florida – Do Not Constitute Deliberate Contacts or Purposeful Availment Sufficient to Establish Jurisdiction

Progressive Select's selection of a Pennsylvania claim professional to handle the investigation into the theft of the Vehicle, which occurred in Pennsylvania due to The Blechers' decision to leave the vehicle in Pennsylvania and never garage it in Florida, was necessitated by the fact that the incident occurred in Pennsylvania. That

is not a contact of Progressive Select. The Blechers' unilateral decision to leave the car in Pennsylvania created the need for a Pennsylvania-based claim professional to investigate the claim on behalf of Progressive Select. Any action that occurred thereafter, including the referral of Alan Blecher to the Attorney General for fraud, was directly attributable to The Blechers' decisions – not Progressive Select's.

The Blechers' claim that the District Court constructed a *sua sponte* theory of force when it noted that "it was the Blechers' decision to store their car in Philadelphia that "forced Progressive Select to have the Blechers' claim investigated in Pennsylvania" is disingenuous, at best. The Blechers are aware that the District Court makes its determination based upon the facts – and any inferences thereto – including the fact that the Vehicle only ever was in Philadelphia until the time of the theft. The District Court's inference based upon the facts was not in error. While the Policy was formed in Florida, it would have been impractical for a Florida-based claim professional to investigate the theft that occurred in Pennsylvania, and the mere fact that an entity weighed its options before realizing that its hand was forced by the actions of another does not create a purposeful availment.

The Blechers selectively applied the facts and holdings in Hunt, Hanson, and Burger King, and ignored the distinctions between Progressive Select and Progressive Casualty in an attempt to persuade this Court that these cases actually favor The Blechers and that the District Court's reliance on the same was in error.

In reality, the facts of these cases are far more similar than The Blechers care to admit. In <u>Hunt</u>, the insurer had no offices, claims offices, claims agents, underwriters, officers, or adjustors located in the state in question. <u>See Hunt</u>, 728 F.2d at 1246. In <u>Hanson</u>, the defendant trust company had no office in and transacted no business in the forum state. <u>See Hanson</u>, 357 U.S. at 251-52. The Blechers contend that the facts here are opposite, but they are not. Much like in <u>Hunt</u> and <u>Hanson</u>, Progressive Select does not have a claims office, adjustors, agents or presence otherwise in Pennsylvania, and Progressive Select was forced to utilize Progressive Casualty's presence in Pennsylvania. The Blechers' application of <u>Burger King</u> to the facts at hand is, plainly, incorrect. Progressive Select did not create a "continuing obligation" between itself and residents of Pennsylvania when it issued a Florida policy to a Florida resident which provided insurance for a vehicle that was supposed to be garaged in Florida. The Blechers' idea of a continuing obligation here is the presence of a Progressive Casualty claim professional and an investigation in Pennsylvania. Even still, as noted previously, the mere presence of a representative in the forum state or an investigation in the forum state is insufficient to create the meaningful contacts required under the law. <u>See Hunt v. Erie Ins. Grp</u>, 728 F.2d 1244 (9th Cir. 1984); <u>Rambo v. Am. S. Ins.</u>, 839 F.2d 1415, 1420 (10th Cir. 1988); <u>Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.</u>, 907 F.2d 911, 913 (9th Cir. 1990).

The Blechers' mistaken interpretation of otherwise, relevant authority, or their unrelated, unfounded hypotheticals regarding "sham investigations", "malicious[] refer[rals]", and "weaponize[ation of] the state's own legal machinery", does not constitute an error, let alone reversible error, by the District Court.

### E. A Jurisdictional Analysis Related to the Defamation Claim Was Not Required Because the District Court Dismissed the Claim for Failure to State a Claim

The Blechers next argue that the District Court erred by failing to address the jurisdictional argument in relation to the defamation claim; however, the District Court clearly noted that the defamation claim was dismissed based upon The Blechers' failure to state a legally cognizable claim. As The Blechers concede, the District Court was not required to rule on jurisdiction provided that the dismissal is correct – as it is here. Indeed, Appellees did not raise the jurisdictional issue of defamation because the Amended Complaint was deficient on its face, and the District Court too recognized the deficiencies.

The Blechers bemoan the District Court for its decision not to analyze Remick and Calder; however, the District Court was under no obligation to do so. The District Court recognized that there was no need for a jurisdictional analysis due to the absolute privilege of the alleged defamatory statement. **Appx16** (citing Marino v. Fava, 915 A.2d 121, 124 (Pa. Super. Ct. 2006). Relevant to the facts of this case, a private party who provides information to a proper authority in connection with a

suspected crime enjoys absolute privilege from defamation. **Appx16** (citing Pawlowski v. Smorto, 588 A.2d 36, 42 (Pa. Super. Ct. 1991). The District Court noted that the referral was made solely to law enforcement officials, was limited to an assertion of fraud, and was made for the purpose of convincing the proper authorities to institute criminal proceedings. **Appx16** (citing Pawlowski, 588 A.2d at 42. Whether it was Progressive Select, Progressive Casualty, or The Progressive Corporation, the District Court dismissed the defamation claim because it was legally insufficient due to the absolute privilege provided under Pennsylvania law. As it is "absolute and cannot be destroyed", the District Court did not err in dismissing the defamation claim against all parties. **Appx17** (citing Marino, 915 A.2d at 124.

Even if a jurisdictional analysis was done, the result would not have changed. The insurance policy contains a clear unambiguous forum selection clause which states that "[u]nless we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction for the county and state where the person seeking coverage from this policy lived at the time of the accident." By all accounts, and by Plaintiffs' own admissions in their Amended Complaint, they were "citizens of the State of Florida"; therefore, the lawsuit must be brought in Florida.

Federal Courts in Pennsylvania and Florida both have consistently held that forum selection clauses are valid and enforceable, as evidenced by the numerous

cases cited in Defendants' Motion to Dismiss and Brief in Support. Federal Courts in Pennsylvania have consistently held that forum selection clauses are binding upon the parties. See <u>Blacklick Hotspot Corp. v. Mansfield Oil Company of Gainesville, Inc.</u>, 2021 WL 3812561 (W.D. Pa. Aug. 10, 2021) (plaintiff has exercised his privilege of choosing a forum when he has agreed, by contract, to bring suit through a specified forum); <u>In Re: Howmedica Osteonics Corp.</u>, 867 F.3d 390 (3rd Cir. 2017) (holding that the forum selection clause should apply to parties who agreed to same, "in all but the most unusual cases"); <u>Mathias v. Caterpillar, Inc.</u>, 203 F.Supp.3d 570 (E.D. Pa. 2016) (forum selection clause in health insurance plan governed by ERISA was valid and enforceable); <u>Otto v. Erie Ins. Exch.</u>, 11 F.Supp.3d 482 (E.D Pa. 2014) (valid and enforceable forum selection clause allowed for suit to be brought in United States District Court for Eastern District of Pennsylvania since plaintiffs lived in the Eastern District); <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court. for Western Dist. Of Texas</u>, 571 U.S. 49 (2013); and <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873 (3d Cir. 1995) (forum selection clause applied and Federal District Court retained authority to transfer to proper venue).

The Blechers' continual focus on the defamation claim as a Pennsylvania contact requiring jurisdiction is a red herring designed to distract the court from the real issues at hand. The breach of contract claim is governed by the forum selection

clause, which ultimately would have caused the other claims, unfounded as they may be, to be transferred along with it.

Pennsylvania courts have discussed this very scenario and has rejected arguments that the forum selection clause does not apply to tort claims outside its scope. See <u>Autochoice Unlimited Inc. v. Avangard Auto. Fin., Inc.</u>, 9 A.3d 1207 (Pa. Super Ct. 2010). In <u>Autochoice</u>, the court rejected Plaintiff's argument that the tort claims fell outside of the scope of the forum selection clause after concluding that the tort claims arose from duties set forth in the contract and not from a general societal policy. See <u>Autochoice</u>, 9 A.3d at 1213. Further, and binding upon this Court, the Third Circuit stated:

> We think, [case law] demonstrate[s] a principle that pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms. The narrow interpretation suggested by Crescent would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum. Adopting it runs counter to the law favoring forum selection clauses in all three jurisdictions whose law might apply.

<u>Crescent Intern., Inc. v. Avatar Communities, Inc.</u>, 857 F.2d 943, 944-45 (3d Cir. 1988).

Similarly, in <u>Winner</u>, the Pennsylvania Superior Court recently bolstered this position by validating an unambiguous forum selection clause which required transfer of a UIM claim and the accompanying bad faith claim. <u>See</u> <u>Winner v. Progressive Advanced Insurance Company</u>, 2025 WL 2716494 (Pa. Super. Ct. 2025). In <u>Winner</u>, plaintiff filed a breach of contract claim and bad faith claim against his insurer in Philadelphia County, and the insurer filed preliminary objections to venue based upon the forum selection clause contained within the contract. <u>Id.</u> at *5. The Court relied upon its prior ruling in <u>Van Divner</u>, wherein the court found the use of the present tense language of the policy, which was "clear, unambiguous, and enforceable as written", tied the relevant time of residence to the time one brings the action. <u>See id.</u> (citing <u>Van Divner v. Sweger</u>, 257 A.3d 1254 (Pa. Super. Ct. 2021). The Court in <u>Winner</u> opined that plaintiff made no new arguments. <u>Id.</u>

The <u>Winner</u> Court ultimately transferred both the UIM claim and the bad faith claim to Chester County based upon the forum selection clause where there was a direct relationship between the UIM claim and the tort claim. <u>Id.</u> Such as here, there is a direct relationship between the contract and tort claims that the claims must follow one another.

**III.  THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS' CLAIMS FOR DEFAMATION WHERE THE BLECHERS FAILED TO SET FORTH A LEGALLY COGNIZABLE CLAIM FOR DEFAMATION**

Much like their arguments made at the District Court level, the Blechers'
arguments here too are unavailing, as the District Court did not err in determining
that Progressive Select was entitled to absolute immunity related to the referral of
Alan Blecher to the Pennsylvania Attorney General. Even in applying the statutory
tests that the Blechers assert, the assertions by any Progressive entity to the Attorney
General would be protected.

### A. The District Court Did Not Err in Relying Upon Marino and Pawlowski in Dismissing the Blechers Defamation Claim

The Blechers attempt to distinguish and discredit Marino and Pawlowski in
an effort to undermine the District Court's dismissal, but Marino notes that "the
privilege extends not only to communications made in open court, but also
encompasses pleadings and even less formal communications." Marino, 915 A.2d
at 124. Marino relies heavily upon the holding in Pawlowski, which concluded that:

> [A]ccording absolute privilege to statements made in or
> **preliminary to** judicial proceedings aims at ensuring free
> and uninhibited access to the judicial system. This policy
> is obviously served by application of the privilege to
> statements made solely to law enforcement officials for the
> purpose of initiating criminal charges. Although such
> statements may ultimately prove to be false or maliciously
> motivated, the same may be said of statements made by a
> party who consults with his or her attorney preliminary to
> instituting a civil action, or of statements made by counsel
> in preliminary conferences or negotiations on their client's
> behalf. Nevertheless, such statements are deemed to be
> absolutely privileged because the policy concerns stated
> above outweigh the right of the defamation plaintiff to

seek redress for harm caused by the statements.

Pawlowski, 588 A.2d at 41-42 (emphasis added).  In Pawlowski, the court made it clear that the privilege is extended statements made preliminary to judicial proceedings, such as the one made here.  The Blechers, plainly, are wrong in their analysis of and argument related to Marino and Pawlowski.

The District Court fairly and succinctly held that private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime enjoy absolute privilege from defamation.  **Appx16** (internal citations omitted).  Because Pennsylvania law is clear on this issue, there was no need for the District Court to undertake a jurisdictional evaluation of the defamation claims.  As such, The Blechers argument that the District Court improperly skipped a jurisdictional analysis regarding the defamation claims is unfounded, and the District Court's decision does not constitute reversible error.

**B.      Application of 75 Pa.C.S. § 1795 and 40 P.S. § 474.1 Would Not Change the District Court's Determination That the Alleged Defamatory Statement Is Protected**

Even if the District Court analyzed 75 Pa.C.S. § 1795 and 40 P.S. § 474.1 as the Blechers suggest, the Blechers' claims would still fail.  An insurance company, and any agent, servant, or employee, is immune from civil or criminal liability arising from the supply or release of written or oral information to any duly authorized Federal or State law enforcement agency, including the Insurance

Department" where the information is supplied in connection with an allegation of fraudulent conduct and where the insurance company has probable cause to believe that the information supplied is reasonably related to the allegation of fraud. 75 Pa.C.S. § 1795(a)(1)-(2). Furthermore, "in the absence of fraud or bad faith, no person or his employees or agents shall be subject to civil liability . . . for any of the following:

> (1) information relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts furnished by them to or received from Federal, State or local law enforcement officials, their agents and employees and designees.

> (2) Information relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts furnished by them or received from other persons subject to the provisions of this act.

> (3) Information furnished by them or received from a Federal, State or local agency, the National Association of Insurance Commissioners or another organization established to detect and prevent fraudulent insurance acts, their agents, employes or designees or a recognized comprehensive database system approved by the Insurance Department."

40 P.S. 474.1(a)(1)-(3). The "absence of bad faith" is defined as "without serious doubt that the information furnished or received . . . is not true." Id. Here, the Progressive Defendants had probable cause – and more – and there was no serious doubt that the information conveyed to the Attorney General was not true, as the Vehicle was never garaged in Florida. As such, the District Court did not err in dismissing the Blechers' defamation claims.

### C. The District Court Did Not Err in Determining That the Blechers'

## "Internal Publication" Theory Was Meritless

The Blechers' theory of "internal publication" fails to consider a key element of defamation which is critical to their claim. Under Pennsylvania law, a plaintiff must establish that:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position.

Breslin v. Dickinson Twp., 2010 WL 3293337, at *11 (M.D. Pa. Aug. 19, 2010). The Blechers' defamation claim against all three Progressive Defendants fails for multiple reasons. The District Court pointed out the first reason, that being the privilege of the statement, and that issue has been briefed more fully. But the Blechers, even if the alleged defamatory statement was not protected, would not have a claim against any party.

For one, The Blechers' "internal publication" argument fails to consider, and likewise their Amended Complaint failed to address, that the Blechers suffered no special harm resulting from the alleged "internal publication". The Blechers needed to allege "actual damages which are economic or pecuniary losses." Id.

As pointed out when this issue was first briefed, the Blechers failed to allege any facts to support a claim for defamation against any party, especially Progressive

Casualty and The Progressive Corporation, neither of whom had any involvement in the Blechers' claim. To prove a claim of defamation against Progressive Casualty and The Progressive Corporation would be impossible given they played no role in the actions complained of within the Amended Complaint. Progressive Casualty and The Progressive Corporation did not make any statements regarding Plaintiffs, as neither entity was a party to the contract and were not involved in the handling of Plaintiffs' claim for comprehensive benefits. <u>See</u> **Appx57 ¶¶** 12-13.

> **D.** **The Blechers' Reliance on <u>Ray v. Kertes</u> Is Misplaced, As the Holding Was Narrowly Applicable Only to Actions Under 42 U.S.C.A. § 1997e**

The Blechers cite directly to <u>Ray</u> for the proposition that the District Court erred in applying absolute privilege, but the Blechers misapply the holdings to this matter. For instance, the Blechers state that "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." <u>See</u> <u>Ray v. Kertes</u>, 285 F.2d 287, 297 (3d Cir. 2002). This quote from <u>Ray</u> also includes a parenthetical citation to <u>Rycoline Prods., Inc. v. C & W Unlimited</u>, which held that a Rule 12(b)(6) motion was inappropriate under its specific factual circumstances because a statute of limitations bar was not apparent on the face of the complaint. <u>Rycoline</u>, 109 F.3d 883, 886 (3d Cir. 1997). Additionally, the language of <u>Ray</u> makes it clear that the holding is tailored to claims related to the exhaustion of administrative remedies related to prisoners' rights cases

pursuant to 42 U.S.C.A. § 1997e, which has no bearing on the facts of this matter. See Ray, 285 F.3d at 295-96.

The Blechers argue that because the Progressive Defendants did not raise the absolute privilege argument in their brief, the District Court could not consider it; however, when looking at the face of the Amended Complaint, the District Court clearly surmised that the absolute privilege applied and ruled as such. Because it was clear on the face of the complaint here, the District Court was within did not commit reversible error by relying upon the absolute privilege.

## IV. THE DISTRICT COURT DID NOT ERR BY DISMISSING THE BLECHERS' CLAIMS AGAINST PROGRESSIVE CASUALTY AS PROGRESSIVE CASUALTY WAS ACTING ON BEHALF OF PROGRESSIVE SPECIALTY

### A. The District Court Properly Concluded that The Progressive Corporation Has No Liability Based Upon the Principles Enumerated in Brown

The District Court's reliance on Brown v. End Zone was not misplaced, despite the Blechers' attempts to prove otherwise. In fact, Brown's ultimate principle that a parent corporation is not liable for the acts of its subsidiaries is precisely the District Court's rationale as to why there is no claim against The Progressive Corporation. See Brown, 259 A.3d 473, 489 (Pa. Super. Ct. 2021); **Appx15**. The Blechers conflate the District Court's decision that the Blechers did not adequately allege how The Progressive Corporation (referred to as "Progressive" in the District Court's Opinion) was responsible for the alleged breach of Progressive

Select based upon the reasons articulated in <u>Brown</u> with the District Court's discussion regarding Progressive Casualty. **Appx15**.

**B.     The Blechers' Reliance Upon <u>Wicks</u> is Misplaced**

The Blechers' participation theory argument and reliance on <u>Wicks</u> is not applicable to the matter at hand.

The court in <u>Wicks</u> made it very clear that where a corporate office is an actor who participates in wrongful acts, that corporate officer can be held liable for misfeasance. <u>Wicks v. Milzoco Builders, Inc.</u>, 470 A.2d 86, 90 (Pa. 1983). Indeed, the individuals who were held personally liable due to misfeasance were corporate officers of Milzoco Builders, and their decisions had a direct causal effect on the harm complained of by the plaintiffs. <u>See</u> <u>id.</u> at 91.

The facts of <u>Wicks</u> are not remotely applicable to this matter. The Blechers attempt to use participation theory to say that Khurram Mizra's and/or Progressive Casualty's actions render them liable for the actions of Progressive Select; however, the Blechers incorrectly applied <u>Wicks</u>. For <u>Wicks</u> to apply, the Blechers would need to have sought damages from a corporate officer of Progressive Select directly for his or her involvement in some sort of tortious action. The Blechers do not and cannot make such an allegation here. The Blechers attempt to use the participation theory to assert liability against Mizra and/or Progressive Casualty merely because they were involved in the claim, but that is not how the participation works in

practice.  See id.

The Blechers again conflate the District Court's holdings relating to Progressive Casualty and The Progressive Corporation.  The District Court stated that "the Blechers do not adequately allege how [The Progressive Corporation] could be liable for Progressive Select's alleged breach of the policy, saying it only 'created corporate policies.'"  **Appx15**.  The Blechers' mistaken belief that this statement applies to Progressive Casualty results in the confusion of arguments.

The District Court directly addressed the claims against Progressive Casualty, holding that there was no contract between the Blechers and Progressive Casualty. **Appx15**.  The Blechers allege that the claims process was formally halted and that Progressive Select chose to assign the entire claims-handling function to Progressive Casualty.  The Blechers' characterization is not entirely correct, and their implication that Progressive Casualty is liable to them is completely false.

### C.    Establishing An Agency Relationship Would Yield the Same Result As Held By the District Court

Taking the Blechers' allegations that an agency relationship was created only leads the court down one path: Progressive Select, the principal, is responsible for the actions of Progressive Casualty, the agent, for any acts within the scope of their authority.  See Walton v. Johnson, 66 A.3d 782, 786 (Pa. Super. Ct. 2019) ("[a]n agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel.

Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters.").  Establishing an agency relationship would not change the District Court's decision that Progressive Casualty had no relationship with the Blechers, as any actions taken by Mizra or Progressive Casualty were done on behalf of Progressive Select, with whom Alan Blecher entered into a contract.  The District Court's decision does not constitute reversible error.

## CONCLUSION

For the foregoing reasons, Progressive Select Insurance Company, Progressive Casualty Insurance Company, and The Progressive Corporation respectfully request that this Court affirm the District Court's December 19, 2025 Memorandum and Order granting the Progressive Defendants' Motion to Dismiss.

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: s/ Daniel J. Twilla
    Daniel J. Twilla PA I.D. 93979)
    E-mail: dtwilla@grsm.com
    Direct Dial: (412) 625-2694
    Adam P. Murdock (PA I.D. 326347)
    E-mail: amurdock@grsm.com
    Direct Dial: (412) 995-5240
    707 Grant Street, Suite 3800
    Pittsburgh, PA 15219
    *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Undersigned hereby certifies that the foregoing **BRIEF OF APPELLEE** complies with the type-volume limitation provided by FED. R. APP. P. 32(a)(7)(B) and contains 7,656 words.

s/ Daniel J. Twilla
Daniel J. Twilla
Adam P. Murdock

## CERTIFICATION PURSUANT TO L.A.R. 31.1

Undersigned hereby certifies that the text of the electronic brief is identical to the text in the paper copies. Undersigned also certifies that a virus detection program has been run on the file and that no virus was detected. The virus detection program used was Microsoft Defender.

s/ Daniel J. Twilla
Daniel J. Twilla
Adam P. Murdock

## <u>CERTIFICATION PURSUANT TO L.A.R. 46.0</u>

Undersigned hereby certifies that the attorneys whose named appear on the brief are members of the bar of the United States District Court of Appeals for the Third Circuit.

s/ Daniel J. Twilla
Daniel J. Twilla
Adam P. Murdock

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on February 25, 2026, true and correct copies of the within **BRIEF OF APPELLEE** were served upon the following via electronic mail and the Court's ECF System:

<u>s/ Daniel J. Twilla</u>
Daniel J. Twilla
Adam P. Murdock